OLIVER v. MARBUT et al.—123 S. W. (2d) 859.

Middle Section. September 24, 1938.

Petition for Certiorari Denied by Supreme Court, January 21, 1939.

John C. Askew, of Nashville, for appellant.
Goodpasture & Carpenter, of Nashville, for appellee.

FAW, P. J. This is an appeal by the complainant below from a decree of the Chancery Court of Davidson County, Part One, dismissing his suit at his cost, and referring the cause to the Master for proof to ascertain the damages, if any, suffered by defendants by reason of a temporary injunction issued pursuant to the prayer of complainant's bill.

The original bill was filed on May 5, 1936, by R. H. Oliver, as complainant, against Clara B. Marbut and C. B. Kelley & Company, as defendants.

Clara B. Marbut is described in the complainant's bill as "Mrs." Clara B. Marbut, but in her answer she is described as "Miss" Clara B. Marbut. In the caption of complainant's bill, C. B. Kelley & Company is described as "a corporation organized and doing business under the laws of Tennessee," but it appears from the undisputed testimony of C. B. Kelley that "C. B. Kelley & Company" is not a corporation; that it is merely a trade name under which C. B. Kelley operates his business as a building contractor and real estate agent and investor. However, the aforesaid misnomers were waived by Miss Clara B. Marbut and C. B. Kelley, both of whom answered the bill on the merits.

Complainant sought by his bill to obtain an injunction inhibiting the defendants from building a residence on a lot owned by defendant Marbut in Cherokee Park, a Subdivision in the city of Nashville, in violation of "restrictive covenants," or "building restrictions," which, it was alleged, were contained in the deed under which defendant Marbut held title to said lot.

The Chancellor heard the case on the pleadings and a large volume of proof by depositions of witnesses and documentary exhibits thereto. The learned Chancellor filed a written finding of facts

and opinion, which we will quote in full, for the reason that the appellant's assignments of error are largely leveled at the Chancellor's finding of facts, and for the further reason that the Chancellor's findings contain a clear, and at the same time succinct, statement of the determinative facts of the case. It is as follows:

"The bill in this cause was filed by the complainant against the defendants, Clara B. Marbut as owner and C. B. Kelly & Company as contractors, to enjoin them from constructing a house which does not comply with the alleged building restrictions upon a certain lot in Cherokee Park, and in the alternative if the defendants refuse to construct the house complying with said restrictions, that they be required by order of the Court to remove the materials and all construction work now upon the property of said Clara B. Marbut.

"The answers admit that the defendants are proceeding to construct a house which does violate the restrictions as to the cost of same, but deny the right of the complainant to the relief sought for several reasons.

"The facts are:

"Cherokee Park is a subdivision in the Western part of the City of Nashville which consists of three sections. The property of the complainant is in Section three and the property of the defendant Mrs. Marbut is in Section two. This property was sold by the original grantor in three sections at three different times, several months intervening between the sale at auction of lots in Section one and the sale at auction of lots in Section two and several months also intervening between the sale of lots in Section two and the sale of lots in Section three.

"It does not appear that at the time of the sale of Section one there were any covenants or representations that lots in Section two and Section three would be sold under the same or similar restrictions, nor does it appear that at the time of the sale of Section two there was any covenant or representation that lots in Section three would be sold under the same or similar restrictions.

"Since the first sale in 1928 there have been 154 houses built upon lots in all three sections, and of these houses 118 have been built in violation of the building restrictions. On the street upon which the complainant and the defendant's houses are located, there have been twenty-three houses erected and of these twenty-one are in violation of the building restrictions.

"The defendant, Mrs. Marbut, having bought her lot began erection of her house thereon, which is approximately 150 feet east of the complainant's house and across a side street and had progressed to the extent that about $2,000.00 had been expended by her and the co-defendant Kelly, and about three months time had elapsed before the complainant Oliver filed the bill herein.

"It does not appear from the record just exactly what the restrictions are upon the property of the defendant, Mrs. Marbut, although she in her answer admits that there are restrictions similar to those upon the property of the complainant in Section three.

"In the absence of any direct evidence as to the exact terms of the restrictions on defendant's property, it seems to be conceded that on that particular lot one restriction was that no residence should be built to cost less than $7500.00, and it is admitted that the house in question when completed was to cost $4748.00.

"It does not appear that before the lots belonging to complainant and the defendant Marbut were sold, the original grantor laid out the entire subdivision, including the lots of both parties, for sale subject to uniform restrictions consistent with a general development scheme. At the time of the first sale it had not been determined what would be done with the remainder of the tract of land, and it could not have been true that the parties hereto and their predecessors in title, purchased their lots on the basis that restrictions upon lots sold in one section were to inure to lots sold in another section for the reason that it does not appear that there was any general scheme for the sale of the entire tract.

"See Ridley v. Haiman, 164 Tenn. 239, 47 S. W. (2d) 750.

" 'Restrictive covenants are in derogation of the right of unrestricted use of property, and are to be strictly construed against the party seeking to enforce them. They will not be enforced by implication . . . and the burden rests upon the person relying on such covenants to bring himself within its terms.' Emory v. Sweat, 9 Tenn. App. 167, 176.

"Where the complainant is guilty of laches by failing to act promptly upon discovery of a ground of complaint, and the consequences of enforcement of the restrictions would be inequitable, the Court cannot grant relief. There has been no uniform observance of the building restrictions in any of these sections of Cherokee Park, and it would be inequitable and oppressive to compel the defendant Mrs. Marbut, to comply with them now, especially in view of the fact that 118 out of 154 of the houses built in all three sections, and twenty-one out of twenty-three of the houses built on the street upon which both complainant and defendant's houses are located, have been in violation of these restrictions.

"It results therefore, that the complainant cannot maintain this suit for the reason that there were no uniform restrictions including the lots of both the parties hereto in a general development scheme, as there was no general development scheme, and by reason of the flagrant violation of the restrictions and the delay of the complainant to make objections to the construction of the house of the defendant, it would be inequitable to grant the relief sought.

"The bill will be dismissed and a reference ordered to ascertain any damages by reason of the suing out of the injunction.

"Decree accordingly.

"R. B. C. Howell,
"Chancellor."

In his decree, after restating the substance of his aforesaid opinion, the Chancellor found and decreed as follows:

"The Court therefore finds:

"1. That there was no general development scheme with reference to the entire tract.

"2. That the restrictions which might be upon the property have been flagrantly violated; and

"3. That the complainant Oliver has been guilty of laches in delaying the filing of his bill in this cause seeking to enforce any restrictions; and

"4. That the property of the complainant Oliver was in Section Three of Cherokee Park and that the property of the defendant Marbut was in another section, towit, Section Two.

"It would therefore for these reasons be inequitable to grant the relief sought.

"It is therefore ordered, adjudged and decreed by the Court that the bill of the complainant be and the same is hereby dismissed at the cost of said complainant, for which let execution issue.

"It is further ordered, adjudged and decreed that the cause be referred to the Master for the taking of proof to ascertain the damages, if any, by reason of the issuance of said injunction.

"To the foregoing decree the complainant Oliver excepts and prays an appeal to the next term of the Court of Appeals for the Middle Section of Tennessee, which appeal is granted by the Court upon proper execution of Bond."

Appellant Oliver perfected his appeal and has assigned errors here—his assignments being numbered one to twelve inclusive.

The assignments numbered four, seven and eight assert that the Chancellor erred in failing to hold and decree in conformity with certain propositions stated in said assignments, respectively. We do not regard these (the fourth, seventh and eighth assignments) as true assignments of error. They are matters of argument; whereas assignments of error should be directed to affirmative rulings of the trial court, and should state "specifically wherein the action complained of is erroneous, and how it prejudiced the rights of the appellant." See Rules, Appendix to 155 Tenn. page XII.

The remaining assignments of error (numbered in the order of their assignment) are that the Chancellor erred—

(1) In holding that there was no general scheme for the development and sale of the entire tract known as Cherokee Park.

(2) In holding and decreeing that the restrictions on Section One did not inure to the benefit of all owners of lots in Sections Two and Three.

(3) In holding complainant guilty of laches by failing to act promptly upon discovery of the ground of complaint.

(5) In holding that there were no uniform restrictions including the lots of both parties hereto in a general development scheme.

(6) In allowing a supplemental answer to be filed, after proof taken, it being an abuse of his discretionary power.

(9) In finding as a fact that Section One, Two and Three of Cherokee Park are separate and distinct subdivisions.

(10) In holding that the subdivision of Cherokee Park and Sections One, Two and Three thereof, are not part of a general scheme of development having the same general restrictions made by a common grantor.

(11) In finding as a fact that there has been no uniform observance of the building restrictions in Cherokee Park.

(12) That there is no evidence to support the decree.

In view of the fact that, as a matter of pleading, the defenses upon which the Chancellor predicated his decree dismissing complainant's bill were presented for the first time by the supplemental answer of C. B. Kelley & Company, it would seem that appellant's sixth assignment of error, through which he asserts that the Chancellor erred in allowing said supplemental answer to be filed "after proof taken" should be first considered.

The statement in the sixth assignment, supra, that the supplemental answer was filed "after proof taken" could have no legal significance unless it is interpreted as a statement that it was after all the proof was taken, or, at least, after all of the complainant's proof was taken. The record does not support this theory.

The original answer of C. B. Kelley was filed on May 29, 1936. On June 8, 1936, complainant Oliver was examined by his solicitor, but counsel for defendants reserved the right to cross-examine him at a later date. On June 12, 1936, Fred E. Causey deposed as a witness for complainant, but counsel for defendants reserved the right to cross-examine him at a later date. The supplemental answer was filed, by leave of the Court, on October 9, 1936, and prior to that date no proof had been taken except the aforesaid unfinished depositions of complainant Oliver and his witness Fred E. Causey.

On November 4, 1936, complainant Oliver was recalled and further examined by his counsel, and in the first question then asked complainant Oliver it was stated that a supplemental answer had been filed by C. B. Kelley & Company, and the attention of the witness was specifically directed to the allegations of the supplemental answer, and, at that time and later, on November 17, 1936,

he was examined and cross-examined at length with respect to the facts pertaining to the defenses set forth in the said supplemental answer.

The remainder of complainant's proof and all of defendants' proof was taken during the month of November, 1936, subsequent to the time the supplemental answer was filed. The major part of the proof on behalf of both parties pertained to the facts involved in the issues presented by the supplemental answer, and complainant did not claim below, and is not claiming here, that he had other proof which he desired to offer. There was no necessary repugnance between the original answer and the supplemental answer, and we think it clear that the Chancellor did not abuse his discretion in permitting the supplemental answer to be filed. Appellant's sixth assignment of error is overruled.

It is seen from the assignments of error hereinbefore set forth that they are, in the main, directed to the Chancellor's findings of facts. We have carefully examined and considered all the evidence in the record, and we are of the opinion that the Chancellor's findings of facts are well supported by the proof, and we concur therein. A restatement of these facts would be superfluous, and would serve no useful purpose.

We are further of the opinion that the facts thus found afford ample support for the decree dismissing complainant's bill at his cost. We have examined a multitude of authorities touching the issues for decision in this case, including authorities cited by able counsel for both parties in their respective briefs, but, as said by Chief Justice Green, speaking for the Court, in Ridley v. Haiman, 164 Tenn. 239, 251, 47 S. W. (2d) 750, 753: "Decisions concerning restrictive covenants are so numerous that it would be impracticable to attempt a review of all of them or to attempt any classification of them."

The opinion in Ridley v. Haiman, supra, contains an illuminating discussion of the subject of building restrictions and their application and enforcement; but the controlling facts of that case were not similar to the facts of the instant case, and the main determinative questions involved in the case now before us were not considered in Ridley v. Haiman, supra.

A great number of adjudged cases bearing upon important phases of the present controversy are cited, collated, and many of them digested, in a series of Annotations in American Law Reports, as follows:

On the subject of "Who may enforce restrictive covenant or agreement as to use of property," 21 A. L. R. 1281; 33 A. L. R. 676; 60 A. L. R. 1223; 89 A. L. R. 812; on same subject, see Note, 37 L. R. A., (N. S.), 12:

On the subject of "Acquiescence by purchaser of lot in restricted

412

district in violations of restrictions as to some lots as waiver of right to insist upon it as to others," 46 A. L. R. 372; 85 A. L. R. 936:

On the subject of "Change of neighborhood in restricted district as affecting enforcement of restrictive covenant," 54 A. L. R. 812. See also 27 R. C. L. pages 771-775, and 18 C. J. pages 400-404.

We think that, when applied to the facts of the record now before us, the applicable authorities support the conclusion of the Chancellor that the complainant has not shown himself entitled to the relief sought by his bill; that the injunction sought by the complainant would be inequitable and unjust to the defendants, and should be denied. The appellant's assignments of error are, therefore, overruled, and the decree of the Chancery Court is affirmed, and a decree will be entered accordingly.

The cause will be remanded to the Chancery Court for the execution of the reference ordered by the Chancellor, and for such further orders and decrees with respect thereto as may be necessary and proper in the premises.

The costs of the appeal will be adjudged against the appellant, R. H. Oliver, and the surety on his appeal bond.

Crownover and Felts, JJ., concur.