J. C. OLIVER, Plaintiff-Appellant, v. OTT SMITH, Defendant-Appellee.—467 S.W.2d 799:

Middle Section. January 8, 1971.

Certiorari Denied by Supreme Court June 7, 1971.

706

Boston & Weatherford, Lawrenceburg, for plaintiff-appellant.

Jerry Colley of MacFarland, Colley, Blank & Jack, Columbia, for defendant-appellee.

PURYEAR, J. This is a damage suit for personal injuries which was tried before the Circuit Judge and a jury on the 17th day of October, 1969, which trial resulted in a judgment for the defendant, based upon a jury verdict.

The plaintiff filed a motion for new trial, which was overruled, and this appeal in error resulted.

The suit arose out of an accident which occurred while the plaintiff, J. C. Oliver, was driving an automobile owned by the defendant, Ott Smith, and which the defendant had offered for sale. At the time of accident, plaintiff was driving the automobile for the purpose of determining whether or not he desired to purchase it.

Upon trial of the case, it was plaintiff's theory that while he was driving this automobile enroute from Pulaski to Lawrenceburg, the steering mechanism failed, causing the automobile to veer to the left, run off the

road, down into a ditch and hit a tree, as a result of which plaintiff was injured.

It was a part of plaintiff's theory that the defendant was guilty of negligence which proximately caused the accident because the defendant knew or should have known that the steering mechanism on said automobile was defective and he failed to give the plaintiff any warning of such defective condition.

It was the theory of defendant that he did not know the steering mechanism on the automobile was defective and could not have ascertained such defective condition with the exercise of ordinary care and that the plaintiff, himself, was in as advantageous a position to ascertain the defective condition of the steering mechanism as the defendant was.

It was further theory of defendant that the defective condition of the steering mechanism became apparent to plaintiff before the accident occurred, while he had an opportunity to avoid it, and that if plaintiff had stopped the automobile and not continued to drive it after the defect became apparent, the accident would not have occurred and plaintiff would not have been injured.

In other words, it is the further theory of defendant that plaintiff assumed the risk or that he was guilty of contributory negligence which proximately contributed to the accident.

It is not necessary to give a recitation of the facts of the case because the plaintiff's assignments of error are all directed at the action of the Court in giving instructions to the jury and receiving the verdict after the case had been submitted to the jury for deliberation.

After the case had been argued by counsel and the trial Judge had charged the jury, then the jury retired for deliberation at about 4:22 P.M. on the afternoon of October 17, 1969, and returned to the courtroom at about 5:20 P.M. on that same day, when the following proceedings ensued:

"THE COURT: Has the Jury arrived at a verdict?

JUROR: Yes, sir.

THE COURT: Read your verdict to us, if you will, or pass it in. (Verdict of the Jury passed to the Court). Is this your verdict, that We the Jury find both the defendant and the plaintiff guilty of negligence but the Plaintiff in a lesser degree; we award the plaintiff, Jesse Oliver, Five Thousand ($5,000) Dollars. Is that what you say here?

JUROR: Yes, sir.

THE COURT: I want to ask you some questions about that, I explained to you the law of proximate contributory negligence and remote—and the doctrine of remote negligence.

LADY JUROR: That's what we mean, remote.

THE COURT: How is that?

LADY JUROR: We meant remote.

THE COURT: You find Mr. Oliver guilty of remote negligence, is that what you find here?

JUROR: Yes, sir.

THE COURT: How is that? Well you understand that if Mr. Oliver is guilty of what we call proximate contributory negligence that contributes directly to the ac-

cident he can't recover anything. You didn't find him guilty of that kind of negligence?

JUROR: No, sir.

THE COURT: You mean by that that you found him guilty of remote contributory negligence, is that what you mean,

LADY JUROR: Yes, sir, that he was not guilty.

THE COURT: Is that what you mean by a lesser degree; speak out now, I want to know,

JUROR: Yes, sir.

THE COURT: How is that?

JUROR: Yes, sir.

THE COURT: All of you that found Mr. Oliver guilty of some act of remote negligence raise you hand, let's see; some act of remote negligence. Do all of you have your hands up?

JUROR: I didn't go along with that.

THE COURT: You don't have your hand up?

LADY JUROR: Well I went along with that, Yes, I'll have to admit that, naturally.

THE COURT: Well I want to be sure that you understand it. It boils down to this, if Mr. Oliver was guilty of what we call proximate contributory negligence that contributed to the accident itself he can't recover anything.

LADY JUROR: No, now we didn't do that.

THE COURT: You found him guilty of some remote negligence so you reduce the amount of verdict?

LADY JUROR: So he could recover something. We felt that both of them knew as much about the rod, that each one knew as much about it as the other one.

THE COURT: Well if you found that under my instructions you can't allow Mr. Oliver to recover then. If you found that they had equal knowledge of it. I'll read that part of the Charge to you again. Do all of you say that you found that they had equal knowledge; is that what you say, speak out now, I want to find out something?

LADY JUROR: Well now I believe this gentleman was the one speaking, speak out.

JUROR: In other words Mr. Oliver was negligent in not stopping and checking the automobile when he discovered it was driving that way.

THE COURT: So you think that he was guilty of negligence in not stopping and examining it?

JUROR: Yes, sir.

THE COURT: When he found out something about it?

JUROR: Yes, sir, when he noticed it was giving trouble.

THE COURT: You want me to go over this section again about the assumption of risk; you want me to read that to you again or you think you understand the law on that?

JUROR: I'd like to hear the first of it.

LADY JUROR: Apparently we don't understand it.

THE COURT: How is that?

LADY JUROR: Apparently we don't understand it, I think you should read it.

THE COURT: As I told you if they had equal knowledge or the means of knowledge, in other words if Mr. Oliver had as much knowledge as Mr. Smith he can't recover because the law says this, in this case if Mr. Oliver had the same knowledge or had knowledge of or means of knowledge of the dangerous defects in the automobile but still continued then he would assume the risk of such undertaking and cannot recover. Is that what you want me to explain to you? You think you understand that?

LADY JUROR: In other words we could just find one of them—

THE COURT: How is that?

LADY JUROR: Negligent, one of the parties.

THE COURT: That's right.

LADY JUROR: Just one.

THE COURT: Or you can find they are both guilty of negligence, find both of them—

LADY JUROR: Then Mr. Oliver couldn't recover?

THE COURT: If Mr. Oliver is guilty of negligence or if he assumed the risk of this thing, which is a form of contributory negligence, he cannot recover.

MR. BOSTON: Judge, if it would be of any benefit to them based on their original statement you might go over remote contributory negligence to them.

THE COURT: Remote?

MR. BOSTON: Yes, I believe that's what they originally stated.

THE COURT: Now if Mr. Oliver was guilty of some act of remote negligence, some act of negligence on his

part that did not contribute directly to the proximate cause of the accident then that would not bar his recovery but must be considered in lessening the amount of your verdict.

LADY JUROR: I think that's what we developed in there, we just didn't word it just exactly right but that's what we meant by him being—

THE COURT: Well I understood from this lady though. I understood her to say you thought that they had equal knowledge of something I didn't know just what she meant.

LADY JUROR: Well we said we didn't think neither one of them knew that there was anything badly wrong with the car.

THE COURT: Well go back in there and think about it a little bit more and see what kind of verdict you can come up with.

(Whereupon the Jury takes the case again at 5:25 P.M., and returns into Court at 6:20 P.M., when the following proceedings were had:)

THE COURT: All of the Jury present. Have you arrived at a verdict this time?

JUROR: Yes, sir. (Verdict handed to the Court).

THE COURT: You say that We the Jury find the defendant not guilty; is that what all of you say?

THE JURY: Yes, sir.

THE COURT: You mean that you find, by that that you find, in favor of the defendant, Mr. Ott Smith?

THE JURY: Yes, sir.

THE COURT: Is that what you mean?

THE JURY: Yes, sir.

THE COURT: Therefore, you find the issues in favor of the defendant, all right?" (B. of E. pp. 160-166).

Plaintiff has filed four assignments of error as follows:

I

"The Trial Court erred in not accepting the verdict of the jury as submitted by the jury to the Court when the jury first returned.

II

The Trial Court erred in repeating certain portions of the charge to the jury.

III

The Trial Court erred in allowing the jury to impeach their own verdict.

IV

The Trial Court erred in making statements to the jury after they had returned the first time, which statements had a tendency to prejudice the minds of the jurors against the plaintiff."

It is obvious that the verdict which was first reported to the Court was a void verdict because it was predicated upon the doctrine of comparative negligence, which doctrine does not prevail in Tennessee. Railway Co. v. Hull (1889), 88 Tenn. 33, 12 S.W. 419; Atlantic Coast Line R. Co. v. Smith (1959), (6th C.C.A.) 264 F.2d 428.

Plaintiff cites several cases in support of his first assignment of error. In Cherry v. Floyd (1969), 60 Tenn.

App. 521, 448 S.W.2d 444, the jury foreman first reported that they found both parties guilty of negligence, but found the defendant "was more at fault" than the plaintiff, whereupon, the trial Judge said he concluded that they took into consideration his charge and found plaintiff guilty of remote contributory negligence, to which the foreman replied "yes sir."

The members of the jury were then individually polled and all agreed to the verdict as reported by the foreman, but in the instant case no such unanimous agreement was indicated until after further deliberation by the jury.

In Crafton v. Edwards (1968), 58 Tenn.App. 606, 435 S.W.2d 486, the jury reported that they found the defendant "guilty of negligence to a minor degree" and awarded plaintiff $1200.00. No issue of contributory negligence was involved in that case.

In Templeton v. Quarles (1963), 52 Tenn.App. 419, 374 S.W.2d 654, the jury reported that they found both parties guilty of negligence and awarded plaintiff $25,-000.00. In that case it was held that the jury obviously meant that they found the decedent guilty of remote contributory negligence. There was nothing in that verdict which suggested or indicated that the jury had applied the doctrine of comparative negligence and this distinguishes it from the case at bar.

■ All three of the foregoing cases, however, are authority for the rule that if, after examination of the terms of the verdict, the trial Judge is able to place a construction thereon which will uphold the verdict, it is incumbent upon the Judge to do so.

However, in the case at bar, the verdict which was first reported was not such that it could be upheld.

As we have heretofore indicated, it was immediately apparent to the trial Judge that the verdict which was first reported by the jury was a void verdict, whereupon he attempted to assist them in molding a verdict in favor of plaintiff, as was done in Cherry v. Floyd, supra, and then asked the jury if they found plaintiff guilty of some act of remote negligence, to which one juror replied, "I didn't go along with that."

If the trial Judge had accepted the verdict as it was first reported, he would have thereafter been required to set it aside upon motion of defendant and we think he made a sincere effort to mold a legal verdict without invading the province of the jury.

Therefore, we find no merit in the first assignment of error and it is respectfully overruled.

In his third assignment, plaintiff insists that the jurors, or at least some of them, impeached their own verdict and it was error for the trial Court to allow them to do so. We find no merit in this assignment.

The case of Leach v. Leach, (1963), 52 Tenn.App. 606, 376 S.W.2d 739, which is cited by plaintiff in support of this proposition that a juror cannot impeach his verdict, is one which involves an attempt by a juror to impeach his verdict by giving an affidavit. Apparently no such affidavit was made and filed until after the jury had been discharged.

In the case at bar the jury was not discharged by the Court until after they had reported that they found in favor of the defendant.

"Until the verdict of the jury has been returned and received by the court as a judicial act, the case is still

with the jury, and the jurors have the right to change their verdict or recast it or remold it until it has been received and their participation ended by discharge. The power of amendment is retained by the jury so long as they are within the confines of the court-room, and have not dispersed. It may be said that notwithstanding the reception by the court of the verdict rendered the court has jurisdiction over the jury as a jury until they shall have been formally discharged, and have separated. Hence, the court may after reception of the verdict recall the jurors if they are still at the bar of the court as a body." Tennessee Procedure In Law Cases Higgins and Crownover, Section 1507.

We find no merit in the third assignment of error and it is respectfully overruled.

The second and fourth assignments are so interrelated that we will consider them together.

The trial Judge repeated his instruction on proximate contributory negligence and assumed risk at the request of at least one member of the jury and his repetition of the instruction on remote contributory negligence was at the request of plaintiff's counsel.

We think that under the circumstances it was his duty to repeat such instructions. In Swaggerty v. Caton (1870), 48 Tenn. 199, after the Court had charged the jury, they retired to consider their verdict and in a short time returned into the courtroom and said they could not agree and were asked by the Court "if they disagreed as to any portion of the charge, or the testimony of the witnesses," to which they replied "that they did not know that they did." Thereupon, the Court repeated a portion of the charge, the jury returned a

second time and said they could not agree, and the Court, without being called upon to do so, repeated portions of his charge.

In reversing and remanding for a new trial in that case, the Supreme Court said:

"It is well enough, when a jury asks for a particular part of a charge upon an indicated subject, for the Court to repeat that part substantially as given. But when a jury merely disagrees as to the result, after weighing the testimony and considering the charge, it is error in the Court to repeat or recharge disjointed portions of his charge * * *." Supra, p. 202

Another case cited by plaintiff is Granberry v. Frierson (1872), 61 Tenn. 326. In its brief opinion in that case the Supreme Court simply said:

"It was error to recall the jury and repeat to it a portion of the charge, the jury not asking and the defendant objecting to it." Supra. p. 327

Therefore, it can easily be seen that Swaggerty v. Caton and Granberry v. Frierson, both supra, are distinguishable from the case at bar and are not controlling.

We think the rule which is applicable here is well stated in C.J.S. as follows:

"The court may re-read the instructions to the jury either at their request, or on its own motion, and it may, in answer to a question of whether an instruction of a certain tenor has been given, state that it has. Any reasonable request by the jury relating to the re-reading of instructions on a topic which is doubtful in the minds of the jury should not be willfully disregarded

by the court. Where the jury return a verdict not authorized by the instructions, re-reading of the instructions by the court preliminary to sending the jury out to return another verdict is not improper." Vol. 89 C.J.S. Trial sec. 476, pp. 120-121.

In the case of Belote v. Memphis Development Co. (1962), 51 Tenn.App. 423, 369 S.W.2d 97, there was a question regarding the respective duties of the vendor and vendee of certain real estate in a suit for damages by the daughter of the vendee, who fell through an opening in the attic, which opening was left by the vendor.

In that case the jury was respited from its deliberations at the adjournment of the Court from one day to the next and upon opening of Court on the following day, the trial Judge repeated a portion of his charge to the jury. This action in repeating a portion of such charge was made the basis of assignments of error. In overruling such assignments, the Court of Appeals said:

"He made no further comment than to read exactly what was in the general charge, and this occurred because, immediately after the charge had been delivered the afternoon before, it was fairly close to the time for the adjournment of Court, and the jury had requested the Court to let them go home, which he did, and the next morning when they came back the question was asked and the Court again simply read what he had said the day before. So that all three of these assignments, I, II and III will be overruled." Supra, 369 S.W.2d p. 103

In the Georgia case of Hubert v. City of Marietta (1968), 224 Ga. 706, 164 S.E.2d 832, one of the assignments of error was directed at the trial Judge's refusal

to repeat a portion of his instructions to the jury. The record disclosed that after the jury had been deliberating for some time they were brought back into the courtroom and the foreman requested a recharge on "permissive use of property as it applies to prescriptive title" which was one of the issues in the case. The trial Judge then undertook to recharge the jury on this subject substantially as he had charged them earlier. Considerable colloquy between the Judge and counsel and foreman of the jury ensued, in which it appeared that the foreman of the jury was still uncertain about the subject. However, the trial Judge declined to further instruct the jury with respect thereto.

In sustaining this assignment, the Supreme Court of Georgia said:

"When the jury requests the court to recharge them on any point, it is the duty of the court to do so." Supra, 164 S.E.2d p. 836.

We think this rule applied by the Georgia Court is applicable to the case at bar and therefore, it was not error for the trial Judge to repeat his instructions on remote and proximate contributory negligence and assumed risk.

In Duane & Co. v. Garretson (1900), 106 Tenn, 38, 58 S.W. 1063, the Supreme Court held that it was reversible error in a civil case for the Court, on complaint of the jury that they cannot read his written charge, or that they do not understand his oral charge, to refuse their request for assistance and explanation, and to send them back to determine the case without adequate knowledge of the law applicable to the case, or reasonable opportunity to acquire such knowledge.

The following quotation from that case is particularly applicable to the case at bar:

"While there was no express request that it be read to them or again delivered, the statement made by the jury was equivalent to a request, and clearly indicated the necessity for instructions. It was the duty of the court, under these circumstances, to have read the charge to the jury or given them such instructions as would aid them in knowing what it was." Supra, p. 40, 58 S.W. p. 1063.

We find nothing in the record to support the fourth assignment to the effect that the trial Court erred in making statements to the jury which had a tendency to be prejudicial to the plaintiff. Moreover, this assignment does not comply with Rule 12(2) of this Court. For the foregoing reasons, the second and fourth assignments of error are respectfully overruled.

All of the assignments of error having been considered and overruled, the judgment of the trial Court is affirmed and the plaintiff will pay the costs of this appeal.

Shriver, P. J. (M.S.), and Todd, J., concur.