**Sharon SMITH, Plaintiff-Appellant,**

v.

**DETROIT MARINE ENGINEERING CORPORATION,**
**Defendant-Appellee,**

and

**Earl Phifer, Individually and d/b/a Jim & Earl's Marine Service & Sales, Defendant.**

Court of Appeals of Tennessee,
Middle Section at Nashville.

Oct. 10, 1985.

Application for Permission to Appeal
Denied by Supreme Court
June 30, 1986.

Harry Camp, Camp & Roney, McMinnville, Michael R. Campbell, Campbell & Campbell, Chattanooga, for plaintiff-appellant.

Philip P. Durand, Stephen W. Gibson, Ambrose, Wilson & Grimm, Jerry J. Phillips, Knoxville, for defendant-appellee.

## OPINION

LEWIS, Judge.

This is an appeal by plaintiff from a judgment dismissing her suit against defendant, Detroit Marine Engineering Corporation (Detroit Marine), after a jury verdict finding both defendant Detroit Marine and defendant Earl Phifer, individually and d/b/a Jim & Earl's Marine Service and Sales, (Phifer) not guilty of the wrongful death of plaintiff's husband, Tom Smith.

On September 13, 1981, Tom Smith, his close friend Martin Barlow, Barlow's son Marty, and Smith's niece Allison Webb all embarked in Barlow's 15 ' 3 " Lucky Strike boat down the Caney Fork River in Van Buren County, Tennessee. Smith sat in the front pedestal seat, Webb sat in the rear pedestal seat. Martin Barlow was operating the boat and his son was sitting next to him. They were proceeding down the river when Barlow began to turn the boat to the left. As he did so, the boat suddenly turned sharply to the left, slid forward on its side, and turned over. As the boat turned, Smith was thrown over the right front of the boat and into the water. He was struck by the boat's motor and killed instantly.

Plaintiff brought a "product liability" action against Detroit Marine and a negligence action against Phifer. Both defendants answered, denying all material allegations of plaintiff's complaint, and filed cross-complaints against each other and third-party complaints against Martin Barlow. The suit against Barlow was dismissed prior to the jury's verdict.

Detroit Marine is a manufacturer and/or seller of accessories and components for outboard motor boats, including steering linkage. Plaintiff alleged that Detroit Marine was strictly liable on the grounds that it was the supplier of the steering linkage on the Barlow boat and that the steering linkage was defective and/or unreasonably dangerous, thus resulting in the death of plaintiff's intestate.

Phifer sells and services outboard motor boats, components and accessories. Plaintiff alleged that Phifer negligently serviced and/or installed the steering linkage supplied by Detroit Marine.

On June 20, 1984, after a five-day trial, the jury returned a verdict in favor of both Detroit Marine and Phifer. On July 19, 1984, judgment was entered on the jury's verdict dismissing the suit as to both. Plaintiff's motion for a new trial was overruled and she timely filed her notice of appeal as to both Detroit Marine and Phi-

fer. Subsequently, by stipulation, the appeal was dismissed as to Phifer.

We first consider plaintiff's second issue. She first contends under this issue that the Court erred in instructing the jury as follows:

> The defendant, Detroit Marine, the distributor of the product in question here to the user of that product, is subject to liability to the user of that for any personal injury suffered by the user and caused by that product if, one, it is part of Detroit Marine's business to distribute such a product; two, the product was sold in a defective condition that is expected to and does reach the user without substantial change in that condition; and three, if the user did not know of the claimed defective condition; and four, if the defective condition of that product makes its intended and normal use reasonably dangerous. An article is reasonably-Excuse me. I'll have to repeat myself. If the defective condition of that product makes its intended use and normal use unreasonably dangerous. An article is unreasonably dangerous if it is dangerous to a greater degree than the ordinary customer would expect having ordinary knowledge of the nature of the product.

Plaintiff says that the charge was erroneous in that it contained the following statement: "If the defective condition of that product makes its intended use and normal use unreasonably dangerous" which burdened her with proving that the product was both defective *and* unreasonably dangerous.

Detroit Marine contends that the instruction was correct; that a plaintiff must show that the product was both defective and unreasonably dangerous at the time it left defendant's hands. Detroit Marine relies on *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516 (Tenn.1973), wherein the Court adopted § 402(a) of the *Restatement (Second) of Torts* (1966) which provides that a plaintiff, in order to recover, must prove that the product was both defective and unreasonably dangerous. Detroit Marine

insists that *Ellithorpe* is still viable and cites *Parker v. Prince*, 656 S.W.2d 391 (Tenn.App.1983), and *Young v. Reliance Electric Co.*, 584 S.W.2d 663 (Tenn.App. 1979), in support of that insistence. The issue of whether a plaintiff has the burden of proving that a product was both defective *and* unreasonably dangerous before he could recover was not before the court in either *Parker* or *Young*. Any language in *Parker* or *Young* which purports to stand for the proposition that the product must be both defective *and* unreasonably dangerous is dicta and that language is in error.

The Tennessee General Assembly, by the passage of Public Acts of 1978, Chapter 703, § 5, did away with the necessity of showing that a product is both defective and unreasonably dangerous. Chapter 703, § 5, which has been codified as Tenn. Code Ann. § 29–28–105(a) provides: "A manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition *or* unreasonably dangerous at the time it left the control of the manufacturer or seller." (Emphasis supplied).

A study of the legislative debate which preceded the passage of Chapter 703, § 5, clearly shows that the statute was intended to be read in the disjunctive ("or") as opposed to the conjunctive ("and").

The Act, as originally introduced in the General Assembly, contained § 402(a) of the *Restatement (Second of Torts* (1966), *in toto*, and required that a product be both defective and unreasonably dangerous before the plaintiff could recover. During the debate in the House of Representatives, Representative Ashford of Shelby County, moved to amend the bill by deleting the word "and" between "condition and unreasonably" and substituting instead the word "or". Representative Ashford stated to the House as follows:

> Mr. Speaker, ladies and gentlemen of the House, the substitution of the word "or" for "and" allows an action to be brought for a defective condition in a

product, or for an unreasonably dangerous condition in a product rather than requiring that the product be defective and unreasonably dangerous and I think probably the sponsors of the bill indicated that they approve of this type of a change which allows both a defective condition of a product that might not be unreasonably dangerous and for an unreasonably dangerous product, and I'd move adoption of the amendment.

The amendment passed by a voice vote and the bill, as amended, was returned to the Senate, which concurred in the amendment.

█ In light of the fact that a specific amendment was made, this Court must assume that the legislature intended the results that naturally flow from that change. The result is that a plaintiff need only prove that a defective condition exists in a product *or* that the product is unreasonably dangerous in order for liability to attach.

█ Here, the Trial Court committed reversible error in instructing the jury that the plaintiff had the burden of proving that the product was both defective and unreasonably dangerous. This instruction placed upon plaintiff a burden that was not intended by the General Assembly.

Instructions given by the trial court must be correct as to the law and facts. *Street v. Calvert,* 541 S.W.2d 576 (Tenn.1976); *Taliaferro v. Green,* 622 S.W.2d 829 (Tenn. App.1981). We must also assume that the jury followed the Trial Court's instructions. *State v. Smith,* 639 S.W.2d 677, 681 (Tenn. Crim.App.1982).

Plaintiff also contends that that portion of the Court's charge which states "if the user did not know of the claimed defective condition" was an erroneous instruction since there was no proof in this case that Tom Smith had any knowledge of the defective condition.

The instructions given by the judge to the jury should be directly applicable to the facts in evidence. There must be testimony tending to raise the question in order for an issue to be submitted to the jury. An instruction which assumes that there is evidence tending to prove certain facts, when there is no such evidence, is erroneous.

*Wilson v. Tranbarger,* 218 Tenn. 208, 402 S.W.2d 449, 461 (1965). (citations omitted).

█ The Trial Judge erred in instructing the jury since there was no evidence to raise this issue. However, under the record in this case, this instruction, standing alone, would be harmless. Tenn.R. App.P. 36(b). On remand, the Trial Judge should not so instruct the jury if there is no evidence to support the instruction.

Plaintiff also complains that the Trial Court failed to charge one of her special instructions. We have reviewed the charge along with plaintiff's Special Request No. 1 and are of the opinion that the Trial Court's general charge adequately covered plaintiff's first special request.

Plaintiff, by her third issue, alleges that the Trial Court erred by instructing and re-instructing the jury regarding contributory negligence. It is her insistence that the re-instructions unduly emphasized contributory negligence.

█ The Trial Court failed in its first instructions to the jury to distinguish between defendants Detroit Marine and Phifer in limiting the defense of contributory negligence to defendant Phifer. The Court re-instructed the jury and specifically limited the availability of the contributory negligence defense to defendant Phifer. The Trial Court's failure to distinguish between the defendants Detroit Marine and Phifer in its first instruction was rendered harmless by the re-instruction.

█ We also find that there was no undue emphasis placed upon the contributory negligence portion of the charge to the jury. Although the instruction was given more than once, the Trial Court made it clear that it was only to clarify and supplement prior instructions. The correctness of the jury instruction should be measured by examining the entire instructions upon the subject matter. *Southern Railway Co. v. Jones,* 228 F.2d 203 (6th Cir.1955). The trial court's recharge must be viewed

in light of previous charges and their sum total equals the complete charge. *Presley v. Amburn*, 62 Tenn.App. 261, 461 S.W.2d 956 (1970). This issue is without merit.

By her fourth issue, plaintiff contends that the Trial Court erred in instructing the jury as follows:

> One who supplies a product which the supplier knows or reasonably should know, is likely to be dangerous for its known intended use, that person has a duty to use reasonable care, to give instructions or warnings of the product's danger, or of those facts which would make the product's use dangerous, to those persons whom the supplier should expect to use or be endangered by the use of that product, if that supplier reasonably should believe such person will not realize the danger.
>
> . . . .
>
> A product, however, is not unreasonably dangerous because of the failure to adequately warn of a danger or hazard that is apparent to the ordinary user of the product.

She insists there was no evidence in the record to support this charge. It is plaintiff's insistence that the Court should have charged the jury as follows:

> Relevant to the determination of whether a product is defective or unreasonably dangerous is the presence or absence of a statement accompanying the product which in some way informs the user of the danger. This statement must be calculated to bring home to a reasonably prudent user of the produce the nature and extent of the danger involved in using the product.

 We find this issue to be without merit. A comparison of the elements of the Trial Court's instruction and the special request shows their essential similarity. The plaintiff cannot complain about the specific wording of the instructions if they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its determination. *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176 (6th Cir.1983).

Plaintiff also raises issues regarding an exhibit being delivered to the jury room, the Trial Court's allowing Detroit Marine, on the date of trial, to file amended answers to interrogatories, and in allowing Detroit Marine's expert to testify about matters not disclosed in his discovery deposition. We find it unnecessary to discuss these issues and, therefore, pretermit them.

The judgment of the Trial Court is reversed and the cause remanded to the Trial Court for a new trial. Costs of this appeal are taxed to Detroit Marine.

TODD, P.J. (M.S.), and CANTRELL, J., concur.